Roberto **TORRES–TALAVERA**,
et al., **Plaintiffs**,

v.

**FORD MOTOR COMPANY**,
et al., **Defendants**.

**Civil No. 12–1158 (FAB).**

United States District Court,
D. Puerto Rico.

Sept. 3, 2013.

Humberto Guzman–Rodriguez, Guayna-bo, PR, for Plaintiffs.

Manuel A. Guzman–Rodriguez, Guzman & Steffens, San Juan, PR, Sergio Medina Seipp & Flick, LLP, Coral Gables, FL, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is defendant Ford Motor Company ("Ford")'s motion to dismiss plaintiffs' complaint, or in the alternative, to exclude evidence. (Docket 51.) Having considered the arguments in defendants' motion and plaintiffs' opposition, (Docket 55), the Court **DENIES** defendant Ford's motion.

## I. BACKGROUND

On March 7, 2012, plaintiffs Roberto Torres–Talavera ("plaintiff Torres"), Evelyn M. Jimenez–Garcia ("plaintiff Jimenez"), the Conjugal Partnership they con- stitute, and Aida Luz Talavera–Santiago ("plaintiff Talavera") filed a complaint alleging products liability against defendant Ford and three John Doe defendants. (Docket 1.) Their complaint alleges design defect claims against Ford for a 1998 Ford Escort that plaintiff Talavera was driving on October 27, 2008 when another car crashed into her. The impact caused plaintiff Talavera's one-year-old grand-daughter ("Baby Sofia"), who was in a car seat in the back seat of the Ford Escort, to suffer serious injuries that ultimately resulted in her death. *Id.* at 2. Plaintiffs seek damages for Baby Sofia's "great amount of pain due to the trauma" and the "serious emotional and mental anguish" suffered by her parents and grandmother, as well as medical expenses. *Id.* at 4 & 6.

■ Defendant Ford previously filed a motion to dismiss and sought sanctions due to spoliation[1] of evidence, contending that its defense has been "substantially prejudiced" as a result of plaintiffs' failure to preserve the Ford Escort at issue. Plaintiffs opposed the motion and argued that the available evidence in the case is sufficient and thus the sale of the vehicle does not hamper defendant Ford's ability to defend itself. On March 20, 2013, the Court entered an Opinion and Order denying defendant Ford's motion. (Docket 50.) Relying on First Circuit Court of Appeals precedent, the Court found that no great prejudice to defendant Ford occurred due to the spoliation of the Ford Escort, because both parties have access to the same ample information in order to prove their cases. *Id.* at 8–10. Because the parties may rely on other evidence[2] to support their claims and defenses, the Court de-

---

**1.** "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Martinez Perez v. Hyundai Motor Co.,* 440 F.Supp.2d 57, 61 (D.P.R.2006) (Acos- ta, J.) (citing *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir.2001)).

**2.** Specifically, the Court found the following available evidence to be sufficient: the testimony by witnesses to the accident, expert investigative reports prepared in the related

nied defendant Ford's motion to dismiss and its request for sanctions. *Id.*

In its current motion, defendant Ford claims that plaintiffs have developed a new design defect theory—dubbed the "spare tire projectile theory." (Docket 51 at 6.) Pursuant to that theory, Baby Sofia's death was proximately caused by the forward intrusion of the spare tire into the Ford Escort's rear seat. *Id.* Defendant Ford argues that the Court should dismiss plaintiffs' complaint or otherwise award sanctions against them because (1) plaintiffs' expert waited until the "eleventh hour" to reveal this theory, and (2) none of the considerations that led the Court to deny defendant's previous motion to dismiss is applicable to the spare tire projectile theory. *Id.* at 6–7. In opposition, plaintiffs claim that they have consistently argued a design defect theory, based not only on the seats, but also on the vehicle and its components "in the aggregate," including but not limited to the passenger compartment, the crush and crumple zones, and the safety cage. (Docket 55 at 2.) Moreover, they argue that the Court's previous finding that sufficient information exists for both parties to use in developing their cases applies not only to plaintiffs' seat design defect claim, but also to their spare tire projectile design defect claim. (*Id.* at 6–16.)

## II. DISCUSSION

■ The Court does not view plaintiffs' "spare tire projectile" supposition as an "eleventh hour" or "new" theory warranting dismissal or sanctions. The complaint can be reasonably interpreted to include a defect claim involving the rear trunk/cargo area, because it accuses the Ford Escort of being "a product dangerous for its reasonably intended use, due to defective design ... of the vehicle, its seats, passenger compartment, crush and crumple zones and safety cage, in the aggregate resulting in lack of adequate crashworthiness to protect its occupants...." (Docket 1 at 5.) Defendant Ford's contentions that plaintiffs' specific "spare tire projectile" theory emerges too late and thus is prejudicial, are also unfounded. The report of plaintiffs' expert, Dr. James W. Pugh, P.E., identified two bases for a design defects claim, both of which "conspired to produce the fatality to the infant": (1) a defective front seatback tilt mechanism, and (2) a defective trunk/cargo hold with compromised crush characteristics and incapable of retaining objects inside.[3] (Docket 55–1 at 9.) Dr. Pugh opines that a violation of the infant's "occupant safe space" occurred "by failure of the driver's seatback" and "by converting the spare tire into a missile that intruded into the rear seating position." *Id.* Dr. Pugh submitted his report to defendants on February 14, 2013, which left sufficient time for defendants to prepare for and conduct Dr. Pugh's deposition regarding those conclusions. (*See* Docket 28 at 2) (showing that the Court set March

criminal case, photographs of the accident, the vehicle's seats, Baby's Sofia's car seat, Baby Sofia's autopsy report, and medical testimony regarding Baby Sofia. (Docket 50 at 10.)

**3.** Simply because these conclusions were not contained in plaintiffs' sur-reply to the previous motion to dismiss or in Dr. Pugh's corresponding affidavit, (Dockets 48 & 48–1), does not justify a conclusion that plaintiffs "were intent on secreting [sic] it from the court lest it result in the granting of Ford's original spoliation [m]otion," as defendant Ford contends. (Docket 51 at 7.) Pursuant to Local Rule 7(c), in those submissions plaintiffs were confined to respond to the arguments made in defendant Ford's reply. Those documents thus understandably pertained only to plaintiffs' design defect theory regarding the seats-and not regarding the spare tire-because defendant Ford did not reference the spare tire theory in its motion and response.

31, 2013 as the deadline for the conclusion of depositions of expert witnesses and for the conclusion of discovery).[4] Accordingly, the Court declines to dismiss plaintiffs' design defect claims on that ground. *See Collazo–Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 28 (1st Cir.1998) ("As a general principle, the court views dismissal with prejudice as a harsh sanction, which runs counter to our strong policy favoring the disposition of cases on the merits.") (internal quotations omitted).

The Court is also unpersuaded that its initial reasons for denying defendant Ford's previous motion to dismiss also do not apply to the current motion. As explained before, the amount of prejudice to defendant Ford depends on whether the case is based on a design or manufacturing defect, as well as the availability of other evidence to resolve defendant Ford's questions. *Talavera v. Ford Motor Co.*, 932 F.Supp.2d 252 (D.P.R.2013) (Besosa, J.). Plaintiffs have dismissed their claims based on manufacturing defects and now proceed only under a design defect theory. (Docket 58.) As a result, spoliation of the vehicle in this case is not as prejudicial as in a manufacturing defect case because "the design defect, by definition, would be found in the entire run of the vehicle model in question." *Bericochea–Cartagena v. Suzuki Motor Co., Ltd.*, 7 F.Supp.2d 109, 113 (D.P.R.1998) (Dominguez, J.). In design defect cases involving allegations that a specific automobile part caused a plaintiff's injury, a party's inability to inspect the automobile does not preclude a plaintiff from bringing the claim. *See, e.g., Collazo–Santiago v. Toyota Motor Corp.*, 937 F.Supp. 134 (D.P.R.1996) (Dominguez, J.) (finding that inspection of the specified automobile or air bags that allegedly caused plaintiff's injuries was not needed in order for plaintiff to pursue a design defect claim); *Bericochea–Cartagena*, 7 F.Supp.2d at 113 ("[T]he spoliation of the Sidekick will not hamper the defense in the instant case and, therefore, it is not a proper basis for dismissal."). Especially in cases where additional evidence is available and can assist both parties in forming their claims and defenses, sanctions and dismissal are not warranted. *Collazo–Santiago*, 149 F.3d at 29 (finding that plaintiff's testimony, other witnesses' testimony, photographs of the car, and accident reconstruction constituted sufficient evidence from which defendant's questions could be answered); *see also Chapman v. Bernard's, Inc.*, 167 F.Supp.2d 406 (D.Mass.2001) (finding that despite spoliation of the subject daybed, no substantial prejudice resulted because expert testimony, police reports, police photographs, and witness testimony were available as evidence).

Defendant Ford implies that. the issue of causation—more specifically, whether the spare .tire indeed slammed into the rear seat and injured Baby Sofia—cannot be proven without examining the Ford Escort in question.[5] The Court

---

4. Plaintiffs clarify that by parties' stipulation, Dr. Pugh's report was produced on time, (Docket 55 at 10), given that the Court's deadline for plaintiffs to produce expert reports was January 31, 2013, (Docket 28 at 1).

5. The First Circuit Court of Appeals has noted without further explanation that examination of an individual automobile and component "may still be of significant import in certain design defect cases where, for example, the

question whether the alleged defect or some other factor caused a particular injury is at issue." *Collazo–Santiago*, 149 F.3d at 29. In those instances, a sanction restricting the evidence may be warranted. *See id.* at 28. The Court does not find that language to mean that in this case sanctions are appropriate, however, because as the First Circuit Court of Appeals went on to hold in *Collazo–Santiago*, additional sufficient evidence exists from

disagrees. As explained in the Court's March 20, 2013 Order, both parties have access to the same sufficient information to prepare their respective cases. An exemplar vehicle is available for the parties to inspect in order to develop their design defect claims and defenses. The issue of causation, for which defendant Ford contends it needs the vehicle, also may be answered by photographs, testimony of several people who witnessed or were involved in the accident, police reports prepared by officers who investigated the accident, an examination of the seats that were preserved, Baby Sofia's autopsy report, and medical testimony regarding Baby Sofia. Given the totality of this available evidence, the Court cannot conclude that Ford's motion should be granted simply because the Ford Escort involved in the accident is not available. To prevail on their design defect case, plaintiffs bear the burden of proving that the product's design was the proximate cause of the damages. *Quintana–Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 69 (1st Cir.2002). Defendant's allegations that "absolutely no" photographs taken either pre- or post-accident depict the spare tire, that no police or investigative report mentions the spare tire, and that no witness testimony refers to the spare tire, (Docket 51 at 10), are certainly persuasive to defendant Ford's defense. They do not necessarily lead to the conclusion, however, that the only manner of proving causation is through an examination of the Ford Escort involved in the accident. Accordingly, the Court does not find that defendant Ford has suffered prejudice sufficient to impose sanctions or dismiss plaintiffs' complaint for spoliation of evidence.

which both parties may develop their claims

## III. CONCLUSION

Defendant Ford's motion to dismiss and to exclude evidence, (Docket 51), is **DENIED.**

**IT IS SO ORDERED.**